No. 26-3281

IN THE
# United States Court of Appeals for the Eighth Circuit

THE SATANIC TEMPLE, INC., AND MORTIMER ADRAMELECH,

*Plaintiffs-Appellees*,

v.

MARK CAMPBELL, *ET AL.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of Iowa
Case No. 4:26-cv-00336-SMR-HCA
(The Honorable Stephanie M. Rose)

## DEFENDANT-APPELLANT MARK CAMPBELL'S EMERGENCY MOTION FOR A STAY PENDING APPEAL AND AN IMMEDIATE ADMINISTRATIVE STAY

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

CATHERINE FRAPPIER
*Assistant Solicitor General*

Hoover State Office Building
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
eric.wessan@ag.iowa.gov

*Counsel for Defendants-Appellants*

November 5, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 4

I. Iowa's Department of Administrative Services Regulates Event Requests for the Capitol. ........ 4

II. The Satanists Apply to Hold a Krampus Costume Event in the Rotunda on December 12, 2026. ........ 5

III. The District Court Orders Director Campbell to Permit the Krampus Costume Event in the Rotunda on December 12, 2026. ........ 9

ARGUMENT ........ 11

I. Legal Standard ........ 11

II. Director Campbell Is Likely to Succeed on the Merits. ........ 12

   A. Director Campbell's denial of the Krampus costume event was reasonable. ........ 13

   B. Director Campbell's denial of the Krampus costume event was viewpoint-neutral. ........ 20

III. The Injunction Is Overbroad and Impermissibly Relies on a State-Law Approval Process ........ 25

IV. The Other Factors Support a Stay. ........ 27

CONCLUSION ........ 30

CERTIFICATE OF COMPLIANCE ........ 32

CERTIFICATE OF SERVICE ........ 32

## TABLE OF AUTHORITIES

### Cases

*Ball v. City of Lincoln*,
870 F.3d 722 (8th Cir. 2017) ........................................................ 21

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011) ........................................................... 16, 17

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ................................................................ 26

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) ................................................................ 13

*E.E.O.C. v. HBE Corp.*,
135 F.3d 543 (8th Cir. 1998) ........................................................ 25

*FAIR v. Neb. Dep't of Soc. Servs.*,
111 F.3d 1408 (8th Cir. 1997) ............................................... 13, 18

*Frye v. Kan. City Mo. Police Dep't*,
375 F.3d 785 (8th Cir. 2004) ........................................................ 16

*Ginsberg v. New York*,
390 U.S. 629 (1968) ................................................................ 27

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
452 U.S. 640 (1981) ................................................................ 14

*Iancu v. Brunetti*,
588 U.S. 388 (2019) ................................................................ 22

*Lubavitch of Iowa, Inc. v. Walters*,
873 F.2d 1161 (8th Cir. 1989) ............................................... 12, 20

*Matal v. Tam*,
582 U.S. 218 (2017) ................................................................ 22

*Mayor of Phila. v. Educ. Equal. League*,
415 U.S. 605 (1974) ................................................................ 23

*Miller v. Honkamp Krueger Fin. Servs., Inc.*,
9 F.4th 1011 (8th Cir. 2021)......................................................... 25

*Minn. Voters Alliance v. Mansky*,
585 U.S. 1 (2018) ............................................................... 18, 19

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................... 11, 29

*Olmer v. City of Lincoln*,
192 F.3d 1176 (8th Cir. 1999) ............................................... 15, 16

*Osborne v. Ohio*,
495 U.S. 103 (1990) .......... 14
*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......... 26
*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
460 U.S. 37 (1983) .......... 17
*Phelps-Roper v. City of Manchester*,
697 F.3d 678 (8th Cir. 2012) .......... 15
*Powell v. Noble*,
798 F.3d 690 (8th Cir. 2015) .......... 12, 14, 17, 20, 27
*Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*,
997 F.2d 484 (8th Cir. 1993) .......... 11, 25
*Satanic Temple v. City of Belle Plaine*,
80 F.4th 864 (8th Cir. 2023) .......... 12, 20
*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 27
*Turtle Island Foods, SPC v. Thompson*,
992 F.3d 694 (8th Cir. 2021) .......... 25
*Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*,
640 F.3d 329 (8th Cir. 2011) .......... 13, 18, 19, 20
*Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*,
109 F.4th 1033 (8th Cir. 2024) .......... 21

**Statutes**

Iowa Code § 8A.322(3) .......... 4

**Rules**

Federal Rule of Appellate Procedure 8(a)(2) .......... 1

**Regulations**

Iowa Admin. Code r. 11-100.2 .......... 15, 19
Iowa Admin. Code r. 11-100.4 .......... 4, 5, 6, 26, 28



Appellate Case: 26-3281 Page: 4 Date Filed: 11/05/2026 Entry ID: 5703299

Mark Campbell, Director of the Iowa Department of Administrative Services ("DAS"), sought a stay in district court, which was denied. Ex.B. The court reaffirmed that the event denial was unreasonable, rejected the argument that the injunction is overbroad, and concluded that the State lacks irreparable harm. *Id.* It stayed compliance deadlines to the earlier of November 16 or twenty-four hours after this Court denies a stay, unless this Court orders otherwise. *Id.* Director Campbell respectfully moves under Federal Rule of Appellate Procedure 8(a)(2), and asks for an **emergency ruling by Thursday, November 12**.

## INTRODUCTION

The Satanic Temple asked three times to hold the same event in the Iowa Capitol Rotunda, each time including a costume contest with masked adults dressed as Krampus, a figure from European folklore storied for beating and kidnapping children, in full-body costumes with horns, masks covering their faces, and rods traditionally used to strike children. Each time DAS declined the event based on the contest.

The district court's preliminary injunction requires Director Campbell to permit the Satanists to hold the Krampus costume event in the Iowa Capitol Rotunda on December 12. That prevents the State from enforcing its Capitol-rotunda-use policies and jeopardizes the State's interests both in security and in maintaining the Capitol as a safe destination for visitors of all ages.

The November 2 order set a deadline of November 9—now administratively stayed to Monday, November 16—for Director Campbell to sign an agreement approving the event. That leaves no time to appeal, even on an expedited basis.

In a limited public forum like the Capitol, the government retains discretion to determine what types of events to permit on its own property so long as its decisions are reasonable and viewpoint-neutral. And Director Campbell reasonably determined that a Rotunda event where adults dress up in full-body costumes as a character known for violence toward children, sticks in hand, was harmful to children and did not reflect the Capitol's purpose of protecting visitors of all ages. And the record conclusively establishes that Director Campbell's denial was based on the

Krampus costumes, not the Satanists' viewpoint: he testified that an otherwise identical application without the contest would likely be approved within one week. The Satanists have never so applied. Yet the district court credited the Satanists' claim that the event denial violated their free-speech rights.

The other factors favor a stay. The State suffers irreparable injury whenever it is enjoined from implementing its policies, and an order compelling the event cannot be undone once the event occurs.

Director Campbell respectfully moves for a stay pending appeal of the district court's preliminary injunction. Alternatively, Director Campbell requests a stay of the November 16 approval deadline, or an administrative stay pending this Court's resolution of this motion. Director Campbell requests a ruling from this Court by **Thursday, November 12, 2026** to allow time to comply with the district court's order if this Court denies relief.

## BACKGROUND

### I. Iowa's Department of Administrative Services Regulates Event Requests for the Capitol.

The Iowa State Capitol building serves both as Iowa's seat of government and an important historical landmark and tourist attraction. Given its artistic and historic value, the Capitol receives many visitors, including children, from around the state of Iowa, the United States, and the world. *See, e.g.*, *Capitol Tours & Resources*, Iowa Legislature, https://perma.cc/SV5Z-YHJQ; *Video and Pictorial Tours of the Capitol and Capitol Grounds*, Iowa Legislature, https://perma.cc/334Z-3EJG.

The Legislature delegated to the Iowa Department of Administrative Services the authority to "establish, publish, and enforce rules regulating and restricting . . . use [of the Capitol] by the public." Iowa Code § 8A.322(3). Under that authority, DAS established rules regulating access for private groups that desire to hold public events at the Capitol. Iowa Admin. Code r. 11-100.4(4).

Each event application undergoes an individualized review process that results in approval only if DAS and the requester sign an MOU on the "conditions" for the event. *Capitol Complex Event*

*Coordination*, Iowa Dep't of Admin. Servs., https://perma.cc/WR26-KXEW; Iowa Admin. Code r. 11-100.4(4)(*a*).

Department regulations and policies establish several approval criteria. Those include whether the event provides "appropriate security and supervision" and whether the event is consistent with Department regulations, the public interest, and "the protection, health and safety of occupants of the buildings and visitors to the capitol complex." Iowa Admin. Code r. 11-100.4(4)(*b*)–(*c*), (5). And because the Capitol "is often a destination for children . . . learning about their State government," Department policy prohibits "visual displays, sounds, and other actions that are harmful to minors." R.Doc.3-11 at 3. That category "includ[es], but [is] not limited to," obscenity or gratuitous violence or gore. R.Doc.3-11 at 3.

## II. The Satanists Apply to Hold a Krampus Costume Event in the Rotunda on December 12, 2026.

In March 2026, the Satanic Temple of Iowa applied to hold a Krampus costume event in the Capitol Rotunda. Krampus is a "half-goat, half-demon, horrific beast" who originated in European folklore as the antithesis of St. Nicholas—more commonly known

as Santa Claus. Tanya Basu, *What Is Krampus? This Is the Real Story of the Christmas Beast*, Nat'l Geographic (Dec. 5, 2018), https://perma.cc/RA87-VTFY.

Designed to terrify children into obedience, Krampus "bear[s] horns, dark hair, fangs, and a long tongue" and "comes with a chain and bells that he lashes about, along with a bundle of birch sticks meant to swat naughty children," whom he would "stuff . . . in a sack, and take . . . away to his lair." *Id.*

Krampus events have turned violent, with performers pulling spectators from crowds to strike them with rods and participants on both sides suffering injuries. *E.g.*, Philip Oltermann, *Austria Struggles with Marauding Krampus Demons Gone Rogue*, The Guardian (Dec. 8, 2019), https://perma.cc/B552-XUZW; Brittany Lyte, *Kauaʻi Christmas Parade Float Sparks Uproar Over 'Demonic' Theme*, Honolulu Civ. Beat (Dec. 15, 2025), https://perma.cc/VS94-5RX4.

The Satanists' 2026 application described their requested Krampus costume event as an all-day "holiday display" with "ritual, Krampus costumes, caroling, and other family-friendly activities

such as coloring pages, and make and take ornaments." R.Doc.3-8 at 13.

That application was identical to the Satanists' 2024 and 2025 applications that included images of the anticipated costumes. R.Doc.3-4 at 34; R.Doc.3-6 at 33. Those images depicted adults dressed in terrifying full-body, horned costumes with masks covering their faces and the rods traditionally used to beat children in hand. R.Doc.11-2 ¶ 23(c); R.Doc.3-4 at 69–70; R.Doc.3-6 at 36–37.

In 2024, after receiving those costume images, then-Department director Adam Steen informed the Satanists their application for the Krampus costume event was denied under DAS's policy against displays and other conduct harmful to minors. R.Doc.3-4 at 92. "The cumulative circumstances that occur within the State Capitol building, including the presence of minors, coupled with the anticipation of costumes with sticks used as weapons on children, positions the event to be harmful to minors contrary to MOU section 5.15." R.Doc.3-4 at 97.



Appellate Case: 26-3281 Page: 11 Date Filed: 11/05/2026 Entry ID: 5703299

In August 2025, Steen left DAS to run for Governor. R.Doc.36-3 ¶¶ 2–3. Mark Campbell became DAS's new director in October 2025. R.Doc.29-1 ¶ 1. Shortly before Director Campbell started as director, the Satanists applied to hold the same Krampus costume contest event in December 2025. R.Doc.3-6 at 11. The application was identical to the requested 2024 event. Director Campbell reviewed the application and concluded, for the same reason Steen had, that the event would be harmful to children. The events office transmitted the denial. Tr. 82:12–25, 94:13–16.

Then, on March 7, 2026, the Satanists filed yet another application for exactly the same Krampus costume event, this time for December 12, 2026. R.Doc.9-1 ¶ 94; R.Doc.3-8 at 13. At the time, DAS was revising its events policy, so it took longer than previous years for DAS to send many applicants—including the Satanists—a memorandum of understanding. Tr. 83:11–84:11. On July 15, two weeks after the policy was finalized, DAS emailed the Satanists a memorandum of understanding to complete and return—a turnaround time faster than most applications during that period. R.Doc.48 ¶¶ 7–8; R.Doc.48-2.

The Satanists returned the completed memorandum on July 31. R.Doc. 11-2 ¶ 45. Two weeks later they sued DAS, Director Campbell, and Steen, asserting federal and state claims, and moved for a preliminary injunction ordering Director Campbell to permit the event. R.Doc. 1; R.Doc. 3.

On September 11, DAS denied the 2026 application, informing the Satanists that the event was "not approved." R.Doc.25-1 at 2. Like the 2025 denial, the 2026 denial email offered: "If you have any questions, contact Director Campbell," and provided his email address. R.Doc.25-1 at 2; R.Doc.3-6 at 47. The Satanists never did. Tr. 24:16–23, 25:7–9.

## III. The District Court Orders Director Campbell to Permit the Krampus Costume Event in the Rotunda on December 12, 2026.

The district court held a preliminary injunction hearing on October 6. Director Campbell testified that he saw no reason why the event would not be approved if the Satanists resubmitted the same application without the Krampus costumes; he committed to reviewing such an application within one week. Tr. 77:3–78:2, 126:7–13; R.Doc.48-1 ¶ 2. Despite offering that exact modification

in 2024 and representing in their briefing and at the hearing their willingness to do so, the Satanists have declined to submit a revised application. R.Doc.3-4 at 97; R.Doc.33 at 4; R.Doc.48-1 ¶ 3; Tr. 77:3–5.

On November 2, 2026, the district court granted the Satanists' preliminary injunction motion on the First Amendment free speech claim. R.Doc.52 at 20. The district court concluded that Director Campbell's denial of the Satanists' 2026 application for a Krampus costume event was unreasonable and discriminated against the Satanists based on viewpoint. R.Doc.52 at 7–20.

The court also ordered Director Campbell to approve the event by countersigning the Satanists' July 31 memorandum of understanding by Monday, November 9, and to report any conditions imposed by Thursday, November 12. R.Doc.52 at 23–24.

Director Campbell filed a notice of interlocutory appeal. R.Doc.53. Director Campbell also sought a stay pending appeal in the district court. R.Doc.55. The district court denied the stay, reaffirming its conclusion that the event denial was unreasonable, rejecting the argument that the injunction was overbroad, and

holding that the injunction does not irreparably harm the State. R.Doc.57 at 3–4.

The district court granted a brief administrative stay of its compliance deadlines, staying its November 9 deadline to the earlier of November 16 or 24 hours after a denial of a stay by this Court, and staying its corresponding November 12 deadline accordingly. R.Doc.57 at 4–5.

## ARGUMENT

### I. Legal Standard

The stay factors are likelihood of success on the merits, irreparable injury, the interests of other parties, and the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical." *Id.*

The movant's burden here was heavier still. A preliminary injunction that gives the movant "substantially the relief it would obtain after a trial on the merits" imposes a "heavy" burden. *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 487–88, 490 (8th Cir. 1993) (quotation omitted).

The injunction does exactly that: it orders the December 12 event to proceed, which is the whole of the relief the Satanists seek. The district court acknowledged in denying a stay that "[m]andatory preliminary relief does carry a heavier burden," R.Doc.57 at 3, but it applied no such standard in its order, which recited the ordinary *Dataphase* factors and found it unnecessary to resolve which merits showing applied. R.Doc.52 at 6–7.

## II. Director Campbell Is Likely to Succeed on the Merits.

Director Campbell is likely to succeed on the merits of his appeal. In a limited public forum like the Capitol, the standard is "whether restrictions on speech are reasonable and viewpoint-neutral." *Powell v. Noble*, 798 F.3d 690, 700 (8th Cir. 2015); *Satanic Temple v. City of Belle Plaine*, 80 F.4th 864, 868 (8th Cir. 2023). The district court correctly assumed that the Capitol Rotunda is a limited public forum, *see Lubavitch of Iowa, Inc. v. Walters*, 873 F.2d 1161, 1163 (8th Cir. 1989), so the questions on appeal are reasonableness and viewpoint neutrality. Director Campbell's denial of the Krampus costume event satisfies that standard.

### A. Director Campbell's denial of the Krampus costume event was reasonable.

In a limited public forum, an access restriction "need only be *reasonable*." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985). It "need not be the most reasonable or the only reasonable limitation." *Id.* The government may exercise discretion and apply its own "expertise in the management of" the forum so long as its decisions are not arbitrary. *FAIR v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408, 1421 (8th Cir. 1997) (en banc).

Director Campbell denying the costume contest satisfied that standard. Reasonableness is assessed "in light of the purpose which the forum at issue serves." *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011) (quotation omitted). Here, the Capitol—an important Iowa historical and architectural landmark and tourist attraction—welcomes "visitors of all ages" to learn about Iowa's history and government, including, for example, by hosting tours open to children every day the Capitol is open. *Video and Pictorial Tours*, *supra*; *Capitol Tours, supra.*

"[P]rotecting the safety and convenience of persons using a public forum is a valid governmental objective." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650 (1981) (quotation omitted). So is "limit[ing] . . . disruption" and "facilitat[ing] safe and efficient access" to public property. *Powell*, 798 F.3d at 701.

More, the State has a strong interest in protecting children, both from physical and psychological harm. *Osborne v. Ohio*, 495 U.S. 103, 109 (1990). And it is reasonable to conclude that a costume event with adults in full-body, masked costumes representing a figure storied for violence toward children, while carrying sticks traditionally used to beat children, would likely frighten child-visitors and undermine the Capitol's interest in providing a safe, welcoming environment for families and visitors of all ages.

The Satanists' requested event also carries security risks that underscore the reasonableness of Director Campbell's decision. Krampus-themed events often turn violent and cause disruption. *E.g.*, Oltermann, *supra*. Permitting participants to bring sticks

traditionally used to beat children is in tension with DAS's rule against dangerous weapons—even if none is ever used as a weapon. Iowa Admin. Code r. 11-100.2(1); *id.* r. 11-100.1. Masks hide participants' faces and identities. R.Doc.11-2 ¶ 23(c); Tr. 23:5–13. And the Satanists' application did not place any guardrails to prevent the event from getting out of hand. Tr. 22:24–24:3.

The district court held that Director Campbell's denial was unreasonable because a concern about what "might frighten children" "is not a permissible basis for excluding speech." R.Doc.52 at 8. But this Court has said the opposite, recognizing that protecting children from "frightening images" is a "constitutionally important" concern that is "significant, compelling, and legitimate." *Olmer v. City of Lincoln*, 192 F.3d 1176, 1180 (8th Cir. 1999) (quotations omitted), *overruled in part on other grounds*, *Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc).

In *Olmer*, the Court held the interest did not sustain an ordinance that barred all picketing on public sidewalks near churches. 192 F.3d at 1180. But *Olmer* involved traditional public fora; here the State is deciding what events it will host inside its

Capitol, a limited public forum where the standard is reasonableness, not narrow tailoring. *See also Frye v. Kan. City Mo. Police Dep't*, 375 F.3d 785, 791 n.2 (8th Cir. 2004).

The district court distinguished *Olmer* on the basis that it limited the government's legitimate interest to the disturbing images, not to other forms of speech about controversial topics. R.Doc.57 at 3; 192 F.3d at 1180. But that distinction does not help the Satanists. DAS did not prohibit the Satanists from expressing their views about Krampus, whatever those may be, in other ways; the problem is the costumes.

The government has a legitimate interest in protecting children from frightening images. So in a limited public forum, the government may make reasonable line-drawing decisions about what crosses that boundary.

The district court next relied on *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), for the proposition that the government does not have an interest in restricting children's access to violent stories or images. R.Doc.52 at 10. But *Brown*, which involved a state law prohibiting selling violent video games to minors,

*id.* at 789, 799, was not a forum case; in any event, *Brown* applied strict scrutiny and thus does not apply here, where the standard is reasonableness.

The district court also faulted Director Campbell for not conducting research to determine how a Krampus costume event might affect children visiting the Capitol. R.Doc.52 at 12. But the reasonableness standard is objective, not subjective. *E.g.*, *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 50 (1983) (assessing objective reasonableness of challenged policy, not the subjective decision-making process). Nor does reasonableness require empirical analysis or proof of past harm. *E.g.*, *Powell*, 798 F.3d at 701 (declining to enjoin ban on signs on sticks and poles at the Iowa State Fair).

The photographs the Satanists submitted show why the decision was reasonable. Even the Satanists' own example of a Des Moines area Krampus-themed event supports DAS's concerns. At that event, organizers told Krampus parade participants to "stay clear of Kinderkorner"—the children's area. R.Doc.33 at 4 (citing *Krampuslauf (Running of the Krampi) presented by Big Grove*



Appellate Case: 26-3281 Page: 21 Date Filed: 11/05/2026 Entry ID: 5703299

*Brewery at #CDM2025*, Christkindlmarket Des Moines, https://perma.cc/ETF2-8ZNH).

The district court also concluded that DAS's policy gives Director Campbell too much discretion. R.Doc.52 at 12–13. But in limited public forums, the government "must be given some discretion in determining what its interests are and how best to further them," and courts respect the government's "expertise in the management" of the forum. *FAIR*, 111 F.3d at 1421 (quotation omitted). So the government retains discretion to make "*ad hoc* but reasonable" decisions. *Victory Through Jesus*, 640 F.3d at 337.

The district court relied on *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018). But that case—which involved a facial challenge to a state law banning voters from wearing "political" apparel inside polling places on Election Day, with potential consequences including a civil penalty or criminal fine—does not require a different result. *Id.* at 5, 8, 16–17.

For starters, as the district court recognized, this suit is an as-applied challenge to Director Campbell's "individual decisions," not a facial challenge to the harmful-to-minors policy. R.Doc.52 at



Appellate Case: 26-3281 Page: 22 Date Filed: 11/05/2026 Entry ID: 5703299

6–7; *see Victory Through Jesus*, 640 F.3d at 337 (facial "unbridled discretion" challenges are "disfavored" and require showing the law is "substantially overbroad").

More, the State in *Mansky* could not consistently define "political," applying it to shirts reading "Support Our Troops" or "#MeToo." 585 U.S. at 19–22. Section 5.15 is cabined by its subject: what an event will involve, and whether that is harmful to the children who visit the Capitol. The examples the district court drew from the prior director's tenure—a display of an oversized contraceptive and a drag show, R.Doc.52 at 11—involved the same question, not a roving license. The test is whether DAS can articulate a sensible basis for this denial, which it has: masked adults carrying rods in a corridor children cannot avoid.

The district court also rejected DAS's security concerns. R.Doc.52 at 13. The district court distinguished *Powell* on the basis that DAS does not have a rule prohibiting sticks. R.Doc.52 at 14. But Department regulations do prohibit dangerous weapons. Iowa Admin. Code r. 11-100.2(1); *id.* r. 11-100.1. The district court also reasoned that the Capitol's metal detectors already address any

danger from the rods. R.Doc.52 at 15. Screening governs what a visitor may carry through the door but does not decide whether DAS must host an event built around masked adults carrying those items among the children who come to the building to learn about their government.

Nor must the rule be written. *Powell*, 798 F.3d at 701–02. In a limited public forum the government must retain the "flexibility needed to properly serve" the forum's purposes, and the First Amendment permits reasonable ad hoc decisions. *Victory Through Jesus*, 640 F.3d at 337.

The district court also distinguished *Powell* on the basis that there the rules "applied to every visitor, regardless of message" and "restricted an object, not a speaker." R.Doc.52 at 14. But that is true here also: DAS's denial is focused on the Krampus costumes, not whether the Satanists may hold an event at all. R.Doc.48-1 ¶ 2.

### B. Director Campbell's denial of the Krampus costume event was viewpoint-neutral.

Government actions are viewpoint-neutral where they are facially neutral and the relevant policy is applied equally. *Lubavitch*, 873 F.2d at 1163; *Satanic Temple*, 80 F.4th at 868.



Appellate Case: 26-3281 Page: 24 Date Filed: 11/05/2026 Entry ID: 5703299

Viewpoint discrimination, in contrast, occurs where the government "has targeted particular views," "not merely the subject matter" of the speech. *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*, 109 F.4th 1033, 1040 (8th Cir. 2024) (quotation omitted). Viewpoint discrimination does not exist where the plaintiff is the only person to violate the relevant policy. *Ball v. City of Lincoln*, 870 F.3d 722, 736–37 (8th Cir. 2017).

The record conclusively establishes that Director Campbell's denial of the Krampus costume event was viewpoint-neutral. Director Campbell's undisputed testimony is that he sees no problem with a revised, otherwise-identical application that omits the Krampus costumes and would process such an application within one week. R.Doc.48-1 ¶ 2.

Nor can the Satanists otherwise show viewpoint discrimination. DAS permitted the Satanists' 2023 holiday display and in 2024 was in the process of approving a one-day *Paradise Lost* event when the Satanists withdrew that application. R.Doc.9-1 ¶¶ 37–47. Nor do the Satanists point to any comparable Capitol Rotunda event DAS has permitted.

The district court concluded that Director Campbell's denial of the Krampus costume event discriminated against the Satanists because the Capitol has previously hosted other holiday events by religious and nonreligious groups. R.Doc.52 at 12. But the Satanists' 2023 holiday display was one of those permitted events. R.Doc.9-1 ¶¶ 37–38. So that history instead shows DAS has treated the Satanists fairly. More, the proper comparator is not "holiday displays" in general, R.Doc.52 at 12, but Capitol Rotunda events by private groups featuring costumes like the Krampus costumes here.

The district court's reliance on *Iancu v. Brunetti* and *Matal v. Tam* is misplaced. Those cases concerned statutes that withheld a government benefit from speech because it was immoral, scandalous, or disparaging—distinctions drawn on the face of the law and keyed to the ideas expressed. 588 U.S. 388, 393–94 (2019); 582 U.S. 218, 243 (2017) (plurality opinion). Section 5.15 draws no such distinction. It asks what an event will involve, not what it says, and DAS applied it to the physical features of this event: adults in full-face masks carrying rods near children. Nothing in the record suggests DAS would permit the same costumes and



Appellate Case: 26-3281 Page: 26 Date Filed: 11/05/2026 Entry ID: 5703299

props in service of a different message, which is what viewpoint discrimination requires.

The district court declined to find that Director Campbell acted from hostility or to rest its order on pretext, R.Doc. 52 at 16, 19, yet concluded that the history of the denials reinforced its viewpoint holding. R.Doc. 52 at 16. That was error.

*Steen's Campaign Comments*. The district court found that the 2024 denial "was not driven solely by concern about the sticks." R.Doc.52 at 16. But the only contemporaneous evidence cited was Steen's consultation with the Governor's office, which produced a draft statement that the event would be harmful to children—the same reason Steen gave the Satanists. The rest is after-the-fact campaign rhetoric by a private citizen. R.Doc.52 at 16–17. Where subjective motive matters, it is the decisionmaker's motive that counts, *Mayor of Phila. v. Educ. Equal. League*, 415 U.S. 605, 622 (1974), and Director Campbell made the 2026 decision. The two men never communicated about the Satanists or their applications. Tr. 35:11–36:2, 93:19–23.



Appellate Case: 26-3281 Page: 27 Date Filed: 11/05/2026 Entry ID: 5703299

*Director Campbell's 2025 and 2026 Denials.* The district court faulted Director Campbell for not "independently evaluating" the earlier denial. R.Doc.52 at 18. But he reviewed each application and the costume photographs himself and concluded that the same event presented the same risk to children. Tr. 82:12–25, 94:13–16. That he described that conclusion in shorthand—denying for the same reason as by then-Director Steen because he agreed that the applications were identical to the one denied in 2024, Tr. 93:1–12—does not erase the independent review he described elsewhere.

*Application Process.* The district court criticized DAS's application processing. R.Doc.52 at 18–19. None of that supports pretext. DAS preliminarily reserved the requested December 12 date throughout, sent the memorandum of understanding faster than it sent many others during the policy revision period, and denied the application in the same two-sentence form it used in 2025—a denial that gave the Satanists Director Campbell's email address and invited their questions. R.Doc.48 ¶¶ 7–8; R.Doc.48-2; R.Doc.25-1 at 2. They never contacted Director Campbell to try to fix any identified deficiencies. Tr. 24:16–23. And the DAS events



Appellate Case: 26-3281 Page: 28 Date Filed: 11/05/2026 Entry ID: 5703299

coordinator's practice of resolving procedural scheduling conflicts with some applicants says nothing about an application that raised no scheduling conflict. The Satanists bore the burden here, *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021), yet they identified no comparable event DAS approved.

## III. The Injunction Is Overbroad and Impermissibly Relies on a State-Law Approval Process.

Courts should not grant injunctions that are "broader than necessary to remedy the underlying wrong." *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 557 (8th Cir. 1998). And preliminary injunctions are an extraordinary remedy that redress only ongoing or future injuries, not past ones. *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1015 & n.3 (8th Cir. 2021). Courts thus should not issue preliminary injunctions when the parties have voluntarily taken steps to address the claimed injuries. *Sanborn*, 997 F.2d at 490. So given Director Campbell's testimony that he sees no problem with an otherwise-identical application omitting the costumes and his commitment to review such an application within one week, the injunction swept too broadly to the extent it was based on the denial of the event as a whole. R.Doc.52 at 15, 19.



Appellate Case: 26-3281 Page: 29 Date Filed: 11/05/2026 Entry ID: 5703299

The district court also recognized that the Satanists' state-law claims cannot support the injunction, because the Eleventh Amendment bars federal courts from granting relief against state officials based on state law. R.Doc.52 at 20; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The injunction therefore rests only on the Satanists' First Amendment free speech claim, and it stands or falls with that claim on appeal.

The same principle measures the remedy. "[T]he scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). The violation the Court found is the denial of the Satanists' application on a ground the Court held impermissible under the First Amendment. An order forbidding DAS from denying the application on that ground gives the Satanists complete relief.

But the injunction extends further. It directs the Director to execute a particular instrument prescribed by Iowa Administrative Code rule 11-100.4(4)(*a*). That requirement administers a state process rather than remedying a federal wrong.

The Satanists may answer that a federal court remedying a federal violation may order a state official to take an action that state law happens to describe. True enough. But where the Court has identified an impermissible ground for denial, an order barring reliance on that ground is complete relief. Compelling a state official's signature of a state-law instrument pursuant to a state-law process, weeks before any appellate court can review the ruling that compels it, provides the Satanists with improper state-law relief.

## IV. The Other Factors Support a Stay.

The equities weigh heavily in favor of staying the district court's order. Any time a State is enjoined from carrying out its own lawful policies, "it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quotation omitted). And States have strong interests in protecting children and determining how government property is used. *See*, *e.g.*, *Ginsberg v. New York*, 390 U.S. 629, 639–40 (1968); *Powell*, 798 F.3d at 699. Requiring Director Campbell to permit the Krampus costume event irreparably harms those interests.

The district court thought this principle inapplicable because the injunction bars no statute or regulation and reaches only “a single decision applying a discretionary standard.” R.Doc.57 at 4. But the Department governs the Capitol through individualized decisions; that is what rule 11-100.4 directs the Director to do. An order holding this application of the harmful-to-minors provision unconstitutional, and compelling the event over the Director’s judgment, displaces the policy as surely as an order enjoining a rule, and will govern every application that follows until this Court decides otherwise.

More, the November 16 deadline is unnecessary for a mid-December event and leaves no time to pursue even an expedited appeal. And if the event proceeds on December 12, the appeal will be complicated by mootness.

The district court reasoned that a stay would simply shift the loss of the event from the State to the Satanists. R.Doc.57 at 4. The two losses are not alike. If the event proceeds and this Court later holds the injunction was wrong, nothing restores the State’s control of its Capitol for that day and the appeal is likely moot. If the event

is delayed and the Satanists prevail, they hold it next December, and this year they hold it elsewhere as they did last December.

The availability of non-injunctive relief (resubmitting without the contest, like they offered to do in 2024) to hold an event in a manner the Satanists themselves suggested would satisfy their goals, R.Doc.33 at 4, undermines their claimed harm. The Department committed to act on an application without the contest within one week; but the Satanists have not submitted one. R.Doc.48-1 ¶¶ 2–3.

The balance of harm and public interest also support a stay. These factors merge when the government is a party. *Nken*, 556 U.S. at 435. The Satanists would not be injured by a stay. Director Campbell is prepared to accept conditions that protect the Satanists' interests. He will consent to expedited briefing in his appeal, and he will countersign the memorandum of understanding within twenty-four hours if the stay is dissolved by this Court or the order is affirmed in time for the December 12 event.



Appellate Case: 26-3281 Page: 33 Date Filed: 11/05/2026 Entry ID: 5703299

## CONCLUSION

This Court should stay the district court's preliminary injunction order pending appeal. Alternatively, this Court should stay the district court's November 16 deadline pending appeal.

The Court should issue an immediate administrative stay to allow time to decide this stay motion. Director Campbell requests a decision on this motion by **Thursday, November 12** to provide sufficient time to comply with the district court's order should this Court deny relief.

Director Campbell has separately moved to expedite the appeal so that it can be resolved before the December 12 event.

November 5, 2026

Respectfully submitted,


BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
ERIC H. WESSAN
*Solicitor General*
PATRICK C. VALENCIA
*Deputy Solicitor General*
CATHERINE FRAPPIER
*Assistant Solicitor General*
Hoover State Office Building
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164

(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
catherine.frappier@ag.iowa.gov

*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), this document contains 5,194 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. And as required by 8th Cir. R. 28A(h), the motion and addendum have been scanned for viruses and are virus-free.

/s/ *Eric Wessan*
ERIC WESSAN
*Solicitor General*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 5th day of November, 2026, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Eric Wessan*
ERIC WESSAN
*Solicitor General*



Appellate Case: 26-3281 Page: 36 Date Filed: 11/05/2026 Entry ID: 5703299