No. 26-3281

---

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

**THE SATANIC TEMPLE, INC., AND MORTIMER ADRAMELECH,**

*Plaintiffs-Appellees*,

v.

**MARK CAMPBELL, *ET AL*.,**

*Defendants-Appellants.*

---

On Appeal from the U.S. District Court for the Southern District of Iowa
Central Division
The Honorable Stephanie M. Rose
Case No. 4:26-cv-00336-SMR-HCA

---

# PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO DEFENDANT-APPELLANT'S EMERGENCY MOTION FOR A STAY PENDING APPEAL AND AN IMMEDIATE ADMINISTRATIVE STAY

---


Shefali Aurora
Thomas D. Story
West O. Connors
505 Fifth Ave., Ste. 808
Des Moines, IA 50309
(515) 207-4153
ACLU of Iowa, Inc.
shefali.aurora@aclu-ia.org

Emily E. Wilson
HASSO & WILSON LAW FIRM
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
(515) 224-2079
ewilson@hwlawiowa.com

Matt Kezhaya
Kezhaya Law PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
(612) 276-2216
matt@kezhaya.law

*Counsel for Plaintiffs-Appellees*

(Additional counsel listed
in signature block)

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES .......... iii**

**INTRODUCTION .......... 1**

**STANDARD .......... 1**

**ARGUMENT .......... 2**

**I. Campbell Has Not Shown a Likelihood to Succeed on the Merits .......... 2**

**A. The Rotunda Is a Designated Public Forum .......... 3**

**B. The District Court Correctly Applied the Limited Public Forum Analysis .......... 5**

**1. Campbell's Basis for Denial Was Not "Reasonable." .......... 5**

**2. Campbell's Basis for the Denial Was Viewpoint Discriminatory .......... 11**

**II. Campbell Will Not Be Irreparably Harmed Absent the Stay .......... 15**

**III. TST Will Face Substantial Harm if the Stay Is Granted .......... 17**

**IV. The Public Interest Lies in Denying the Stay .......... 18**

**V. The Remedy Properly Addresses the First Amendment Violation .......... 19**

**CONCLUSION .......... 22**

**CERTIFICATE OF COMPLIANCE .......... 23**

**CERTIFICATE OF SERVICE .......... 24**

# TABLE OF AUTHORITIES

## Cases

*Bd. of Airport Comm'rs of the City of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987)....................6

*Brady v. Nat'l Football League*, 640 F.3d 785 (8th Cir. 2011)....................2

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011)....................7, 8

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985)....................6

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975)....................8

*Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023)....................12

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001)....................6, 17

*Healy v. James*, 408 U.S. 169 (1972)....................9, 17

*Hill v. Colorado*, 530 U.S. 703 (2000)....................4

*Hilton v. Braunskill*, 481 U.S. 770 (1987)....................2

*Johnson v. Bayens*, No. 4:20-cv-00306, 2020 WL 12618873 (S.D. Iowa Dec. 10, 2020)....................3

*Lubavitch of Iowa, Inc. v. Walters*, 684 F. Supp. 610 (S.D. Iowa 1988)....................3

*Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605 (1974)....................13

*Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018)....................6

*Nken v. Holder*, 556 U.S. 418 (2009)....................2, 16–17

*Novus Franchising, Inc. v. Dawson*, 725 F.3d 885 (8th Cir. 2013)....................15, 17

*Olmer v. City of Lincoln*, 192 F.3d 1176 (8th Cir. 1999)........................................8

*Phelp-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012)...........................8

*Powell v. Noble*, 798 F.3d 690 (8th Cir. 2015)......................................................10

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992).......................................................4

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)...................................................4, 12

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019)...................................................20

*Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484 (8th Cir. 1993)..........................................................................................................................19

*Schneider v. New Jersey*, 308 U.S. 147 (1939)......................................................18

*Sessler v. City of Davenport*, 102 F.4th 876 (8th Cir. 2024).................................3, 4

*Shurtleff v. City of Boston*, 596 U.S. 243 (2022)..................................................17

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994)..........................................4

*Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329 (8th Cir. 2011).........................................................................................6

*Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*, 109 F.4th 1033 (8th Cir. 2024)...............................................................................................................5

*Widmar v. Vincent*, 454 U.S. 263 (1981)...............................................................17

*Wierman v. Casey's Gen. Stores*, 638 F.3d 984 (8th Cir. 2011)...............................4

*Wis. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)....................................15, 17

**Rules and Regulations**

Iowa Admin. Code r. 11-100.4.........................................................................3, 16



Appellate Case: 26-3281 Page: 4 Date Filed: 11/10/2026 Entry ID: 5704873

## INTRODUCTION

This free speech case arises from Defendant Mark Campbell's exclusion of The Satanic Temple, Inc.'s ("TST") family-friendly holiday celebration scheduled for December 12, 2026, from the Iowa Capitol Rotunda. Campbell excluded TST for a third consecutive year because he believed the Krampus costumes might frighten children and that prop sticks sometimes worn with the costumes could potentially be used to strike children. Both claims lack any factual basis and are purely speculative.

The district court found that TST was likely to succeed on the merits, and carefully crafted a preliminary injunction protecting TST's constitutional rights by ordering Campbell to approve TST's event, while also preserving the State's interests in protecting children and managing its property. R. Doc. 52, at 22.

Campbell sought an emergency stay, which the district court denied. R. Doc. 57, at 2–4. Campbell now renews his request and asks this Court for an emergency stay pending appeal and an immediate administrative stay.

The Court should deny both motions. Campbell has not met the heavy burden of demonstrating that the circumstances of this case warrant a stay.

## STANDARD

This Court considers four factors in determining whether to stay a district court order pending appeal: "(1) whether the stay applicant has made a strong

showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "A stay is not a matter of right, even if irreparable injury might otherwise result," but instead is "an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The burden falls squarely on the movant to demonstrate that specific circumstances warrant relief. *Id.* at 433–34.

## ARGUMENT

### I. Campbell Has Not Shown a Likelihood to Succeed on the Merits.

Campbell fails to make a "strong" showing that he is likely to succeed on the merits. *Brady*, 640 F.3d at 789. The district court assumed the Rotunda was a limited public forum and still found that a preliminary injunction was warranted because Campbell's stated concern that Krampus "might frighten children . . . is not a permissible basis for excluding speech." R. Doc. 52, at 8. It correctly found that even under a limited public forum analysis, Campbell's reliance on "an indeterminate prohibition" to make an unsupported and unreasonable decision denying TST's application was unconstitutional. *Id.* at 11–12. Alternatively, this Court need not reach that level of analysis because the Rotunda is a designated

public forum and Campbell's content-based exclusion clearly does not survive strict scrutiny. *Sessler v. City of Davenport*, 102 F.4th 876, 881–82 (8th Cir. 2024). Moreover, the record contains abundant evidence that Campbell's decision was viewpoint-based and unconstitutional in any forum. R. Doc. 52, at 16–20.

### A. The Rotunda Is a Designated Public Forum.

A designated public forum is a public area that has not traditionally been open to free speech activity, but that the government has designated for open expression. *Sessler*, 102 F.4th at 882–83. The nature of the Capitol Complex has already been litigated: It is a designated public forum. *See Johnson v. Bayens*, No. 4:20-cv-00306, 2020 WL 12618873, at *6 (S.D. Iowa Dec. 10, 2020); *Lubavitch of Iowa, Inc. v. Walters*, 684 F. Supp. 610, 613 (S.D. Iowa 1988), *aff'd*, 873 F.2d 1161 (8th Cir. 1989). Physical markers, special characteristics, objective uses, government intention, and policy all demonstrate that the Rotunda is a designated public forum. *See Sessler*, 102 F.4th at 882. There is a long history of expressive activity at the Rotunda. R. Doc. 11-2, ¶ 8. It is separated from offices and legislative chambers and is open to the general public during normal business hours. The policy is intended to allow anyone to use it for public events on a first-come, first-served basis without restrictions on subject matter of permissible events or permissible classes of applicants. R. Doc. 3-17; Iowa Admin. Code r. 11-100.4(4).

The district court did not rule otherwise; it merely assumed the less protective limited public forum analysis applied because Campbell's reasoning was unconstitutional under any standard. R. Doc. 52, at 8. This Court may affirm "for any reason supported in the record, even if that reason is different from the rationale of the district court." *E.g.*, *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011).

In a designated public forum, any content-based restrictions must pass strict scrutiny and be narrowly tailored to serve a compelling governmental interest. *Sessler*, 102 F.4th at 881. A "content-based" restriction regulates speech based on hostility—or favoritism—towards the underlying message expressed. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992). "The vice of content-based legislation . . . is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes." *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015) (quoting *Hill v. Colorado*, 530 U.S. 703, 743 (2000) (Scalia, J., dissenting)). Regulations of speech are only content-neutral when the outcome does not depend on a reference to the ideas or views expressed. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994).

Campbell has always acknowledged that he excluded TST for content-based reasons, *i.e.*, because of expressive activity expected to occur at the event. R. Doc. 29-1, ¶¶ 12–15. But he has never supplied a "compelling" interest nor explained

how excluding TST's whole event is "narrowly tailored." Therefore, the Court should deny the stay because his appeal has no likelihood of success.

### B. The District Court Correctly Applied the Limited Public Forum Analysis.

Alternatively, even if the Rotunda is a limited public forum, the district court correctly found that Campbell's reasoning for denial was unconstitutional. "When the government opens a limited public forum, it may employ content-based restrictions to the use of that forum, but they must be both viewpoint neutral and reasonable in light of the forum's purpose." *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*, 109 F.4th 1033, 1039 (8th Cir. 2024). After an evidentiary hearing, the district court found that Campbell's denial was not reasonable and instead, "raises a serious question of viewpoint discrimination." R. Doc. 52, at 12. On appeal, Campbell reasserts the same defense he raised before. *See* Defendant-Appellant Mark Campbell's Emergency Motion for Stay Pending Appeal at 17–19 (*hereinafter* "Appellant's Mot."). This defense does not survive review.

#### 1. <u>Campbell's Basis for Denial Was Not "Reasonable."</u>

Campbell denied the event because it would be "harmful to minors." R. Doc. 52, at 8. In Campbell's mind, "[h]arm's a big word" and "psychological harm . . . is the same as physical harm." A109–10, Tr. 77:24–78:8. As the district court correctly found, this "virtually open-ended interpretation" is not a reasonable basis

to exclude access to a public forum. R. Doc. 52, at 11 (quoting *Minn. Voters All. v. Mansky*, 585 U.S. 1, 16 (2018)).

To be "reasonable," a restriction must reflect "the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001); *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 335 (8th Cir. 2011). Furthermore, when restricting the use of a limited public forum, "the State must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." *Mansky*, 585 U.S. at 16. Considering "all the surrounding circumstances," a restriction of access is unreasonable if it does not support the function of the forum, *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 809 (1985), or if it is so ill-defined as to "confer[] . . . virtually unrestrained power," *Board of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987) (citations omitted).

Campbell argues that his denial was reasonable, given the Government's interest in protecting the physical and mental well-being of children. Appellant's Mot. at 14. That is, Campbell personally believes that the Krampus costume may be frightening to children because—as he understands it—the folklore around the character of Krampus involves "the harming of children and taking them to hell." R. Doc. 52, at 9; A119, Tr. 87:7–88:8. As discussed below, this is viewpoint

discrimination. It is also unreasonable. Based on this belief, Campbell denied TST's application pursuant to section 5.15 of the Memorandum of Understanding (*hereinafter* "MOU"):

> Because the Capitol Complex is often a destination for children . . . visual displays, sounds, and other actions that are harmful to minors including, but not limited to, obscene materials . . . and gratuitous violence or gore are not permitted.

R. Doc. 3-3, at 50. The MOU defines these categories by using the elements of obscenity. *Id.*; R. Doc. 52, at 2. Therefore, to find Campbell is "likely" to succeed on the merits—to find he reasonably applied a sufficiently definite standard—would require a finding that any Krampus costume is obscene *per se*.

Campbell makes no such claim, relying instead on the expansive scope offered by the MOU's use of the phrase, "including, but not limited to." Appellant's Mot. at 5. Campbell's argument fails because it is based on his subjective view of what *may* frighten children, not an objective standard. The district court's analysis acknowledged the State's "legitimate power to protect children from harm" but also recognized that interest does not create a "free-floating power to restrict the ideas to which children may be exposed." R. Doc. 52, at 10 (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011)). Governments cannot suppress speech "that is neither obscene as to youths nor subject to some other legitimate proscription . . . solely to protect the young from

ideas or images that a legislative body thinks unsuitable for them." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213–14 (1975). The Supreme Court has specifically declined to recognize violent content as an unprotected category of speech for minors, acknowledging that many children's stories contain the same kind of violent lore that Campbell ascribes to Krampus here. *See Brown*, 564 U.S. at 794–96. When Campbell contends, "[t]he government has a legitimate interest in protecting children from frightening images," he notably omits any citation to supporting authority, because none exists. Appellant's Mot. at 16. Campbell elsewhere relies on *Olmer v. City of Lincoln*, 192 F.3d 1176, 1180 (8th Cir. 1999), *overruled by Phelp-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc), but that too does not support the proffer. "Absent a picture of a dead body or the like, there is no credible and unbiased evidence that the mere presence of a sign-carrying antiabortion protestor harms young children." *Id.* The anticipated Krampus costumes are not a "dead body or the like." *See* A171–72. They are not "terrifying" under any definable standard. Appellant's Mot. at 7. This is only Campbell's personal reaction based on what he'd heard growing up. A119, Tr. 87:18–19.

In practice, both Campbell and his predecessor have treated the "harmful to children" excuse as unfettered discretion to exclude speech they personally found distasteful for a variety of reasons. R. Doc. 52, at 11 (noting two other instances in

which DAS censored speech solely because its directors personally found it offensive). It is not "reasonable" to find that the MOU allows suppression of more than "obscenity" to include anything "officials find frightening, grotesque, or unsuitable for children [which] provides no 'sensible basis for distinguishing what may come in from what must stay out.'"[1] *Id.* at 11–12 (citations omitted).

Alternatively, Campbell argues that the denial was reasonable because the prop sticks sometimes featured as part of the Krampus costume pose a security risk. Appellant's Mot. at 19. The district court already heard and rejected this excuse, too. R. Doc. 52, at 13–15. Campbell performed no inquiry into whether TST actually would hit children. Had he done so, he would have learned that TST is doctrinally opposed to beating children, R. Doc. 11-2, at 24, and had even told his predecessor as much. A052, Tr. 20:23–25. His reasoning was based solely on speculation, rooted in stories he heard as a child, not about TST specifically, but Krampus generally. A119, Tr. 87:16–25. It says nothing about this event that Krampus-costumed people halfway across the world have sometimes hit children; Campbell needed to prove that TST had the specific intent to do so. *See Healy v. James*, 408 U.S. 169, 186 (1972). Censors have the burden to prove the propriety

---

[1] Equally demonstrative of Campbell's unfettered discretion are the many events with possible violent or upsetting connotations to children which he allowed to proceed. R. Doc. 48-2.



Appellate Case: 26-3281 Page: 13 Date Filed: 11/10/2026 Entry ID: 5704873

of their concerns with evidence, and when they operate based on stereotypes, they do so unlawfully. *Id.* at 184–86.

Campbell also complains that TST's application did not place any "guardrails to prevent the event from getting out of hand." Appellant's Mot. at 15. This newfound justification fails under the slightest scrutiny. The application form does not ask about security "guardrails," and neither Campbell nor anyone else ever asked about TST's security measures. A058, Tr. 26:8–16; R. Doc. 3-6, at 12. Despite routinely working with other applicants "to resolve concerns before deciding whether to approve an event," Campbell denied this event, without explanation, after sitting on the application for six months. R. Doc. 52, at 14; A110–11, Tr. 78–79. Moreover, as the district court aptly noted, the "no sticks" rule uniquely targeted TST. *Id.* at 14. Unlike in *Powell v. Noble*, the government here did not uniformly prohibit bringing an object onto the premises. 798 F.3d 690, 701–02 (8th Cir. 2015). In fact, the MOU includes a list of prohibited items, and sticks are not on the list. R. Doc. 3-3, at 51. Rocks, another object that can be used for violence, have been allowed for other applicants. Yet Campbell saw no "children's safety" concern about an event which included painting rocks. A106, Tr. 74. Campbell's sole concern was another group's property, not children's safety. A105–06, Tr. 73–74, 91:4–9. Campbell is not even in charge of security at the Capitol Complex; security is overseen by the Iowa Legislature. A099, Tr. 67:1–18.



Appellate Case: 26-3281 Page: 14 Date Filed: 11/10/2026 Entry ID: 5704873

Considering all the surrounding circumstances, Campbell's decision to deny TST's application was not reasonable.

2. Campbell's Basis for the Denial Was Viewpoint Discriminatory.

Nor was Campbell's decision viewpoint neutral. The record is rife with examples of the State's disparate treatment of TST. R. Doc. 11-1, at 10–16; R. Doc. 3-3, at 107, 112, 120–22, 129, 141–42; R. Doc. 3-4, at 107, 112, 120–22, 129, 141–42; R. Doc. 3-19, *passim*. The district court correctly found that Campbell engaged in viewpoint discrimination:

> Excluding Krampus costumes because they might frighten children, while admitting the season's celebratory displays, targets a perspective on the holiday rather than the holiday itself. The Supreme Court has held that disfavoring expression because it offends, or because officials judge it immoral or scandalous, is viewpoint discrimination.

(R. Doc. 52, at 12 (citation omitted)).

Campbell argues that TST cannot show viewpoint discrimination because of prior approvals of TST events. Appellant's Mot. at 21. However, the record evidence does not support this argument. In July 2024, TST applied to hold a four-day reading of John Milton's *Paradise Lost*. R. Doc. 3-3, at 18–20; R. Doc. 3-4, at 18–20. Two weeks later, the Iowa Department of Administrative Services (*hereinafter* "the Department") adopted the one-day, one-event policy and retroactively applied it to TST's pending application, sending an MOU for a one-day reading instead of four. R. Doc. 3-2, ¶ 15. As a result, TST was forced to



Appellate Case: 26-3281 Page: 15 Date Filed: 11/10/2026 Entry ID: 5704873

withdraw the application so they could hold a holiday event later that year. A071, Tr. 39:7–12. Steen publicly stated that he changed the policy because he disagreed with the religious views of TST. A077, Tr. 45:2–12 ("I'm also the guy that changed the policy to make sure that we weren't going to lose a free speech argument."). Confronted with this at the hearing, Steen could not recall his own words, and attributed the policy change to other factors. A074–75, Tr. 42–43; A077–78, Tr. 45–46. The shifting justifications for the policy change are clear evidence of viewpoint discrimination.

Campbell suggests that because the district court declined to find he acted from hostility, its finding of viewpoint discrimination was erroneous. Appellant's Mot. at 23. The district court was not required to find he acted from hostility to conclude that the denials were viewpoint discrimination. R. Doc. 52, at 19; *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1144–45 (D.C. Cir. 2023) ("Viewpoint discrimination violates the First Amendment, 'regardless of the government's benign motive . . . or lack of animus toward the ideas contained in the regulated speech'") (quoting *Reed*, 576 U.S. at 165); *see also* *Reed*, 576 U.S. at 167 ("Innocent motives do not eliminate the danger of censorship.").

There is ample record evidence that, at the very least, Steen's denial was based on hostility and disfavor of TST's religious viewpoint. (R. Doc. 3-3 at 107,

112, 120–22, 129, 141–42; R. Doc. 3-4 at 107, 112, 120–22, 129, 141–42). Campbell elides the connectivity between Steen's decision and his subsequent denials. Appellant's Mot. at 23. Campbell's denials represent a continued deprivation of their constitutional rights which started with Steen's 2024 denial. *Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 622 (1974); R. Doc. 52, at 18. Campbell testified that he denied both applications because they were identical to the one Steen had denied, and he concurred with Steen's reasons without independently evaluating them. *Id.*; A089, Tr. 57:5–24; A114, Tr. 82:12–25; A125–26, Tr. 93:7–25. Campbell attempts to walk back his testimony as "shorthand." Appellant's Mot. at 24. Yet, he specifically testified, repeatedly, that he did not conduct an independent evaluation of whether the costumes would actually be harmful to children and has provided no evidence of "harm." A089, Tr. 57:11–14; A114, Tr. 82:12–25; A125–26, Tr. 93:7–25. Campbell has not previously disavowed the viewpoint discrimination perpetrated by Steen, and cannot do so now.

Campbell also argues that because he gave TST his contact information and invited questions when he denied the applications, they were treated fairly. Appellant's Mot. at 24. This itself was differential treatment and further evidence of pretext and viewpoint discrimination. In every other instance, Campbell worked with applicants before issuing a denial to propose changes that would allow the

event to proceed, and he provides no other example where he denied an event and then expected the applicants to amend it. R. Doc. 52, at 19; A093, Tr. 61:4–16; A100, Tr. 68:3–25; R. Doc. 3-3, at 107, 112, 120–22, 129, 141–42; R. Doc. 3-4, at 107, 112, 120–22, 129, 141–42; R. Doc. 25-1; A085, TR 53:7–24; A100, Tr. 68:3–25. But Campbell never told TST what would make its event acceptable before denying it. R. Doc. 52, at 19. Because in his eyes, nothing would. He issued a denial, followed by an invitation to ask about the basis. A106, Tr. 74:14–21. Campbell himself acknowledged this was different from how he responded to every other application. *Id.*

Campbell's treatment of TST's application departed from ordinary practice in two other ways. First, the Department ordinarily responds to an application within about one business day, even if the MOU is sent later, but did not do so with TST. R. Doc. 52, at 18; R. Doc. 3-2, ¶¶ 41, 44, 46(b); R. Doc. 48-2; R. Doc. 3-19, *passim*. Though he now claims the Department "sent the memorandum of understanding faster than it sent many others during the policy revision period," Appellant's Mot. at 24, this does not address the delays between submission of an application and the initial response or acknowledgement. TST did not even receive an acknowledgement of their application until 130 days after submission. R. Doc. 9-1, ¶¶ 100–01. Second, in each of the last three years, TST's application proceeded to an MOU and was then denied. R. Doc. 52, at 19; R. Doc. 3-2, ¶¶ 19,

25, 35, 39, 44–45; R. Doc. 25-1. Nothing in the record shows any other applicant was treated that way. R. Doc. 48-2.

Campbell's treatment of TST's application departed from the ordinary practice and was a pretext "to disapprove of TST's message, not to make a neutral judgment about safety." R. Doc. 52, at 20.

* * *

As outlined above, Campbell has failed to make a "strong" showing that he is likely to succeed on the merits. The Rotunda is a designated public forum, and Campbell's restrictions are facially content-based without a compelling justification. Assuming *arguendo* that the Rotunda is a limited public forum, Campbell's decision is unreasonable and viewpoint discriminatory. This factor weighs against granting a stay.

## II. Campbell Will Not Be Irreparably Harmed Absent the Stay.

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). "Implicit in each of these principles is the further requirement that the movant substantiate the claim that irreparable injury is 'likely' to occur." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Campbell first asserts that "[a]ny time a State is enjoined from carrying out its own lawful policies, 'it suffers a form of irreparable injury.'" Appellant's Mot. at 27. The district court appropriately rejected this argument because the injunction does not bar a statute or regulation, but rather reaches only "a single decision applying a discretionary standard." R. Doc. 57, at 4. Further, "[t]he Department may still impose the conditions it applies to other indoor events, and the Capitol's ordinary security screening remains in place," thus, Campbell can still exercise his authority under Iowa Admin. Code r. 11-100.4 as long as it does not violate TST's constitutional rights. *Id.*

Next, Campbell asserts that requiring him to permit the Krampus costume contest would jeopardize the Department's interests in protecting children and determining how government property is used. Appellant's Mot. at 27. However, the district court correctly found "[t]he record . . . provides little factual support for the concern." R. Doc. 52, at 12. TST has provided substantial evidence that there will be no harm to children at the event. *See, e.g.*, R. Doc. 11-2, ¶¶ 27, 30. Whereas Campbell relies on speculation and hearsay, based on his understanding of Krampus from childhood stories. R. Doc. 52, at 12. And points to news reports of violence in Europe, but offers no evidence to connect those examples to a costume contest in the Iowa Capitol Rotunda. *Id.* The complete absence of evidence is fatal, given that Campbell bears the burden of establishing entitlement to a stay. *Nken*,



Appellate Case: 26-3281 Page: 20 Date Filed: 11/10/2026 Entry ID: 5704873

556 U.S. at 433–34. Campbell has not shown that the harm he alleges is likely to occur; his purely speculative concerns do not supersede TST's constitutional rights. *Wis. Gas Co.*, 758 F.2d at 674.

Additionally, having made "a forum generally open," Campbell cannot now claim he will suffer immediate and irreparable harm from TST's participation in that forum. *Widmar v. Vincent*, 454 U.S. 263, 267 (1981); *Healy*, 408 U.S. at 181; *Shurtleff v. City of Boston*, 596 U.S. 243, 258 (2022); *Good News Club*, 533 U.S. at 112.

Ultimately, Campbell has not met his burden to show "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc.*, 725 F.3d at 895. And has failed to demonstrate that he will suffer irreparable injury in the absence of a stay. The district court properly rejected Campbell's contentions of irreparable harm. R. Doc. 57, at 3–4. This factor also weighs against the stay.

## III. TST Will Face Substantial Harm if the Stay Is Granted.

In the preliminary injunction order, the district court concluded that TST would suffer irreparable injury in the absence of an injunction. R. Doc. 52, at 21. The certain harm to TST outweighs any speculative harm to Campbell. If the stay is granted, it would deny TST's event for a third consecutive year; importantly, "[i]f relief does not issue before [the scheduled holiday event] the opportunity will

be lost, and no later judgment can restore it." R. Doc. 52, at 21; R. Doc. 57, at 4. Conversely, Campbell can still impose the same conditions that are applied to other indoor events, including security measures and screening of props, to effectuate his stated interests. R. Doc. 52, at 22.

Campbell's argument that TST can hold its event next December, or elsewhere as it was forced to do in 2025, also fails. The Supreme Court has recognized that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939). As the district court aptly recognized, "[r]equiring TST to hold the event elsewhere would not alleviate the irreparable nature of the harm; it would merely relocate the speech while permitting the likely constitutional violation to persist." R. Doc. 52, at 22.

TST alone faces an irreparable harm: the censorship of its protected First Amendment expression. The third prong weighs overwhelmingly against granting a stay.

## IV. The Public Interest Lies in Denying the Stay.

The district court properly found that the public interest lies in protecting TST's constitutional rights and denying the stay. R. Doc. 57, at 4. It reinforced that "'it is always in the public interest to protect constitutional rights,' and 'the balance of the equities generally favors the constitutionally protected freedom of

expression.'" *Id.* (citations omitted); R. Doc. 52, at 22. And it concluded that while a stay would harm the public interest, an injunction would leave Campbell's interests intact. R. Doc. 52, at 22. Finally, the district court noted that "Director Campbell's concern that the appeal may become moot does not change the analysis" because it only shifts the harm to TST. R. Doc. 57, at 4. The public interest prong does not support granting the stay in this case.

## V. The Remedy Properly Addresses the First Amendment Violation.

In light of evidence that Defendants violated TST's constitutional rights and repeatedly caused delays, the district court crafted an appropriate injunctive remedy. Now facing an emergency timeline of his own creation, Campbell argues that the district court's injunctive relief was inappropriate for several reasons. First, he argues that courts should not issue preliminary injunctions when parties have voluntarily taken steps to address the claimed injuries and suggests that he would review (but not necessarily approve) a new application if TST omits the costume contest. Appellant's Mot. at 25, 29. Campbell relies on *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993). But the defendant there had *already* "voluntarily taken remedial action," and accordingly, this Court found that "the district court was not clearly erroneous in declining to grant a prohibitory preliminary injunction." *Id.* at 489. That is plainly not the case here; Campbell offered only vague assurances he would reconsider TST's event if

TST modified it to suit his whim, stripping their protected speech. Appellant's Mot. at 25. The district court addressed this in the order granting preliminary injunction, finding that "[a] speaker is not required to strip its event of protected expression to gain access to a forum from which that expression was unlawfully excluded." R. Doc. 52, at 15. It reiterated the same point in its order on the motion to stay. R. Doc. 57, at 4. Requiring TST to change its event does not alleviate the irreparable nature of the harm; rather, it allows the constitutional violation to persist. Censors do not have the power to tell TST which aspects of its protected speech are "acceptable."

Next, Campbell suggests the district court's remedy was overbroad and asserts his own remedy as the only proper course: "An order forbidding DAS from denying the application on [an unconstitutional] ground gives the Satanists complete relief." Appellant's Mot. at 26. He does not cite any First Amendment case law to support his assertion that the district court was constrained to this specific relief. Instead, he asserts baldly that "where the court has identified an impermissible ground for denial, an order barring reliance on that ground is complete relief." *Id.* at 27. This characterization misstates the law and the nature of the violations in this case. District courts have discretion to craft injunctive relief that matches the circumstances of the case. *Rodgers v. Bryant*, 942 F.3d 451, 457–58 (8th Cir. 2019) (collecting cases on discretion to shape injunctive relief).

The circumstances of this case demonstrate that the preliminary injunction was well within the district court's discretion and appropriate to address the violation of TST's rights. The district court not only found that the State's sole stated reason for rejecting TST's application likely violated the First Amendment, but it also acknowledged that the State had treated TST differently than other applicants by delaying their application and declining to work directly with them when putative concerns arose. R. Doc. 52, at 18–19. On the record before the district court, it was more than reasonable to fashion a remedy that ensured TST's First Amendment rights were protected from imminent, irreparable harm, rather than allowing Campbell the leeway to cause further delays by concocting a new pretextual reason to suppress speech he disfavors.

Finally, Campbell requests an emergency ruling by Thursday, November 12, complaining that the current timeline leaves no time to appeal. Appellant's Mot. at 6. All delays in this case are solely attributable to Campbell. R. Doc. 3-3, at 31–35, 93, 96–98; R. Doc. 3-4, at 31–35, 93, 96–98; R. Doc. 11-1, at 12–13; R. Doc. 57, at 5 n.1. His argument that a November 16 deadline is unnecessary for the December 12 event is inconsistent with the Department's policy and past treatment of TST. The policy requires applicants to submit event applications a minimum of 30 days before events, and the November 16 deadline is only 25 days before the requested event. R. Doc. 3-17, at 2. It is this very timeline that he claims justified rejecting

TST's offer to amend the application in 2024. R. Doc. 29, at 5. It also only gives TST 25 days to organize and prepare for its event. Campbell, having caused delays through improper and extensive discovery requests and untimely presentation of supplemental evidence after the hearing, cannot now complain that he does not have sufficient time to pursue an appeal. This is just another attempt to cause delay and block TST's event for yet another year.

## CONCLUSION

For the foregoing reasons, this Court should deny the motions for stay pending appeal and administrative stay.

Respectfully submitted this 10th day of November 2026.


/s/ Shefali Aurora
Shefali Aurora, AT0012874

/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558

/s/ Thomas D. Story
Thomas D. Story, AT0013130

/s/ West Oliver Connors
West Oliver Connors, AT0016753

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515) 243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org
Email: Rita.Bettis@aclu-ia.org

Email: Thomas.Story@aclu-ia.org
Email: west.connors@aclu-ia.org

/s/ Emily E. Wilson
Emily E. Wilson AT0013860

/s/ Melissa C. Hasso
Melissa C. Hasso AT0009833

HASSO & WILSON LAW FIRM
111 E. Grand Ave., Suite 212
Des Moines, IA 50309
Telephone: (515) 224-2079
Fax: (515) 224-2321
Email: ewilson@hwlawiowa.com
Email: mhasso@hwlawiowa.com

/s/Matt Kezhaya
Matt Kezhaya, MN # 0402193
Admitted *pro hac vice*

Kezhaya Law PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
Telephone: (612) 276-2216
Email: matt@kezhaya.law

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1. Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f), the brief contains 5,199 words.

2. This brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

3. Pursuant to Eighth Circuit Local Rule 28A(h), undersigned counsel hereby certifies that the brief has been scanned for viruses and that the brief is virus-free.

Date: November 10, 2026

Respectfully submitted:

/s/ Shefali Aurora
Shefali Aurora, AT00012874

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515)243-3988
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org

*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system.

Date: November 10, 2026

Respectfully submitted:

/s/ Shefali Aurora
Shefali Aurora, AT00012874

ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone: (515) 207-4153
Fax: (515) 243-8506
Email: Shefali.Aurora@aclu-ia.org

*Attorney for Plaintiffs-Appellees*